**Hearing Date:  August 19, 2014 at 9:45 a.m.**
**Objection Deadline:  June 30, 2014**

Sigmund S. Wissner-Gross
May Orenstein
Marek P. Krzyzowski
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

Steven D. Pohl
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

*Counsel for Edward S. Weisfelner*,
*as Litigation Trustee of the LB Litigation Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>LYONDELL CHEMICAL COMPANY, et al.,<br><br>Debtors. | Case No.  09-10023 (REG)<br><br>Chapter 11 |
| EDWARD S. WEISFELNER, AS<br>LITIGATION TRUSTEE OF THE<br>LB LITIGATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>HOFMANN, *et al.*, each on their own behalf, and on<br>behalf of a class of defendants consisting of persons or<br>entities who, directly or indirectly, received payments<br>in respect of shares of the Lyondell Chemical<br>Company upon the conversion of such shares on<br>December 20, 2007 into the right to receive $48 in<br>cash,<br><br>Defendants. | (Jointly Administered)<br><br><br><br><br>Adv. Pro. No. 10-05525 (REG) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 3

ARGUMENT......................................................................................................................... 7

I.      CERTIFICATION OF DEFENDANT CLASSES UNDER RULE 23......................... 7

II.     THE PROPOSED CLASS SATISFIES THE PREREQUISITES
        OF RULE 23(a). ...................................................................................................... 8

III.    A NON-OPT-OUT CLASS SHOULD BE CERTIFIED UNDER
        RULE 23(b)(1)(B). ................................................................................................. 15

IV.     BECAUSE IT QUALIFIES UNDER BOTH RULE 23(b)(1)(B) AND
        RULE 23(b)(3), THE ACTION SHOULD BE CERTIFIED UNDER RULE
        23(b)(1)(B) ............................................................................................................ 24

V.      IN THE ALTERNATIVE, CLASS CERTIFICATION IS PROPER UNDER
        RULE 23(b)(3). ...................................................................................................... 25

VI.     NOTICE TO THE PROPOSED CLASS .................................................................. 28

CONCLUSION.................................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Amchem Prods., Inc. v. Windsor,
521 U.S. 591 (1997) ...........................................................................................25

Bolanos v. Norwegian Cruise Lines Ltd.,
212 F.R.D. 144 (S.D.N.Y. 2002) ...............................................................25, 27

Branch v. F.D.IC.,
825 F. Supp. 384 (D. Mass. 1993) ...................................................................23

Brown v. Ticor Title Ins. Co.,
982 F.2d 386 (9th Cir. 1992) ............................................................................21

Canadian St. Regis Band of Mohawk Indians by Francis v. State of N.Y.,
97 F.R.D. 453 (N.D.N.Y. 1983)..................................................................18, 29

Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.,
98 F.R.D. 254 (D. Del. 1983) ...........................................................................18

Consol. Rail Corp. v. Town of Hyde Park,
47 F.3d 473 (2d Cir. 1995) ............................................................................8, 24

Cordes & Co. Fin.Servs., Inc. v. A.G. Edwards & Sons, Inc.,
502 F.3d 91 (2d Cir. 2007) ................................................................................28

County of Suffolk. v. Long Island Lighting Co.,
907 F.2d 1295 (2d Cir. 1990)............................................................................17

Endo v. Albertine,
147 F.R.D. 164 (N.D. Ill. 1993) ........................................................................26

Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.,
651 F.3d 329 (2d Cir. 2011) ...............................................................................4

Eubanks v. Billington,
110 F.3d 87 (D.C. Cir. 1997).............................................................................22

First Fed.of Michigan v. Barrow,
878 F.2d 912 (6th Cir. 1989) ..........................................................8, 17, 21, 24

Gen. Tel. Co. of the Southwest v. Falcon,.
457 U.S. 147 (1982),
aff'd sub nom., Falcon v. Gen. Tel. Co., 815 F.2d 317 (5th Cir. 1987)................28

Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
  114 F.R.D. 48 (S.D.N.Y. 1987) ..........................................................................25

Guy v. Abdulla,
  57 F.R.D. 14 (N.D. Ohio 1972) ............................................................. 7, 17, 21

In re Broadhollow Funding Corp.,
  66 B.R. 1005 (Bankr. E.D.N.Y. 1986). ............................ 7, 8, 9, 10, 11, 12, 13, 24

In re Dehon, Inc.,
  298 B.R. 206 (Bankr. D. Mass. 2003) ........................................................ 8, 12, 29

In re Integra Realty Res., Inc.,
  179 B.R. 264 (Bankr. D. Colo. 1995)......................................9, 10, 11, 12, 17, 24, 26, 28, 29

In re Integra Realty Res., Inc.,
  354 F.3d 1246 (10th Cir. 2004)..........................................2, 8, 19, 21, 23, 24, 28

In re Itel Secs. Litig.,
  89 F.R.D. 104 (N.D. Cal. 1981) ...........................................................................28

In re LILCO Secs. Litig.,
  111 F.R.D. 663 (E.D.N.Y. 1986) .........................................................................27

In re Motors Liquidation Co.,
  447 B.R. 150 (Bankr. S.D.N.Y. 2011) .................................................................26

In re School Asbestos Litig.,
  789 F.2d 996 (3d Cir. 1986) .................................................................................16

In re Visa Check/MasterMoney Antitrust Litig.,
  280 F.3d 124 (2d Cir. 2001),
  cert. denied, 536 U.S. 917 (2002), overruled on other grounds by,
  In re IPO Sec. Litig., 471 F.3d 24 (2d Cir. 2006) ...............................................25

In re Vitamin C Antitrust Litig.,
  279 F.R.D. 90 (E.D.N.Y. 2012) ...........................................................................25

LaFlamme v. Carpenters Local No. 370 Pension Plan,
  212 F.R.D. 448 (N.D.N.Y. 2003),
  aff'd, 127 F. App'x 3 (2d Cir. 2005).....................................................................22

Landau v. Chase Manhattan Bank,
  367 F.Supp. 992 (S.D.N.Y. 1973)........................................................................17

Larionoff v. United States,
    533 F.2d 1167 (D.C.Cir.1976),
    aff'd, 431 U.S. 864 (U.S. 1977) ........................................................................ 16

Luyando v. Bowen,
    124 F.R.D. 52 (S.D.N.Y. 1989) ........................................................................ 12

Lynch Corp. v. MII Liquidating Co.,
    82 F.R.D. 478 (D.S.D. 1979) ............................................................................. 7

Marcera v. Chinlund,
    595 F.2d 1231 (2d Cir. 1979),
    judgment vacated on other grounds by, 442 U.S. 915 (1979) .............................. 7, 12, 13, 15

McReynolds v. Richards-Cantave,
    588 F.3d 790, 800 (2d Cir. 2009) ..................................................................... 16

Northwest. Nat. Bank of Minneapolis v. Fox & Co.,
    102 F.R.D. 507 (S.D.N.Y. 1984) .................................................................... 9, 11

Oneida Indian Nation of Wisconsin v. State of N.Y.,
    85 F.R.D. 701 (N.D.N.Y. 1980) ...................................................................... 18

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985),
    cert. dismissed as improvidently granted by, 511 U.S. 117 (1994) ..................... 21, 22

Robertson v. NBA,
    556 F.2d 682 (2d Cir. 1977) ............................................................................ 24

Robinson v. Watts Detective Agency,
    685 F. 2d 729 (1st Cir. 1982) ........................................................................... 23

Sessions v. Owens-Illinois, Inc.,
    267 F.R.D. 171 (M.D. Pa. 2010) ...................................................................... 18

Thomas v. Albright,
    139 F.3d 227 (D.C. Cir. 1998) ......................................................................... 22

Tilley v. TJX Cos., Inc.,
    345 F.3d 34 (1st Cir. 2003) .......................................................................... 17, 18

Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.),
    464 B.R. 606 (Bankr. S.D.N.Y. 2012) .............................................................. 10

U.S. Trust Co. of New York v. Alpert,
    163 F.R.D. 409 (S.D.N.Y. 1995) ........................................ 7, 10, 11, 12, 15, 17, 29

Van Gemert v. Boeing Co.,
    590 F.2d 433 (2d Cir. 1978),
    aff'd, 444 U.S. 472 (1980) ..................................................................................16

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (2011) ...................................................................... 16, 21, 22, 23

Weisfelner v. Fund 1 (In re Lyondell Chem. Co.),
    503 B.R. 348 (Bankr. S.D.N.Y. 2014) .................................................................3

Wetzel v. Liberty Mut. Ins. Co.,
    508 F.2d 239 (3d Cir. 1975) ...............................................................................21

Wyandotte Nation v. City of Kansas City, KS,
    214 F.R.D. 656 (D. Kan. 2003)................................................................... 15, 29

## STATUTES

11 U.S.C. § 548 ....................................................................................................3, 5

11 U.S.C. § 548(a)(1)(A) .............................................................................. 1, 20, 27

11 U.S.C. § 548(c) ...........................................................................................11, 12

11 U.S.C. § 550(a) ..................................................................................................23

## RULES

Fed. R. Bankr. P. 7023 ........................................................................................1, 7

Fed. R. Civ. P.  12(b)(1) ...........................................................................................4

Fed. R. Civ. P.  12(b)(6) ...........................................................................................4

Fed. R. Civ. P.  23(a)..........................................................................5, 7, 8, 9, 10, 12, 15

Fed. R. Civ. P.  23(b)(1) ............................................... 15, 16, 17, 21, 24, 28, 29, 31

Fed. R. Civ. P.  23(b)(1)(B)............... 1, 2, 3, 5. 7, 15, 17, 18, 19, 20, 25, 29, 30

Fed. R. Civ. P.  23(b)(2) ........................................................................ 15, 16, 21, 22

Fed. R. Civ. P.  23(b)(3) ........................................ 2, 7, 15, 16, 21, 23, 24, 25, 26, 27, 28, 30, 31

Fed. R. Civ. P.  23(c)........................................................................................28, 30

Fed. R. Civ. P.  23(g) ................................................................................................14

Fed. R. Civ. P.  54(b) ...............................................................................................4


**OTHER AUTHORITIES**

1 H. Newberg, <u>On Class Actions</u>, § 1140(a) ..........................................................19

2 <u>Newberg on Class Actions</u> § 4:17 (5th ed.) ........................................................20

2 <u>Newberg on Class Actions</u> § 5:26 (5th ed.).........................................................24

5 <u>Moore's Federal Practice</u> § 23.46[2] [a] (3d ed. 1997).........................................26

7A C. Wright & A. Miller, <u>Federal Practice & Procedure: Civil</u> 2d § 1777 (3d ed. 2014) ..........27

6A <u>Federal Procedure</u> § 12:182 ..............................................................................18

Plaintiff Edward S. Weisfelner, as Litigation Trustee of the LB Litigation Trust (the "**Litigation Trustee**"), respectfully submits this Memorandum of Law in Support of Class Certification under Federal Rule of Civil Procedure 23, as incorporated by Federal Rule of Bankruptcy Procedure 7023.

## PRELIMINARY STATEMENT

The central question in this action is whether the payments made to the shareholder Defendants in the failed leveraged buyout of Lyondell Chemical Company ("**Lyondell**") by Basell AF S.C.A. ("**Basell**") (the "**Transaction**") constitute fraudulent transfers under Section 548(a)(1)(A) of the Bankruptcy Code. Because that question turns on the conduct of the parties that orchestrated the Transaction—rather than the conduct of the approximately 32,000 former Lyondell shareholders that received merger consideration and comprise the proposed Defendant class—the answer will be the same for each Defendant. For that reason, the most efficient and superior method for adjudicating these claims is through certification of a defendant class.

Such certification should proceed on a non-opt-out basis. Rule 23(b)(1)(B) provides for certification of a non-opt-out class where there is a risk that adjudication of an individual action would, as a practical matter, be dispositive of subsequent individual actions. That is the case here. If these claims were to proceed on an individual (instead of class) basis, they would in all likelihood be consolidated before this Court and litigated on a common evidentiary record. Under such circumstances, there is no prospect that this Court (or the District Court) would study the extensive factual record and reach its conclusion in the first such individual action adjudicated as to whether the Transaction's shareholder payments were fraudulent transfers, only to reverse itself on that very question in subsequent individual actions.

Indeed, multiple courts have certified non-opt-out defendant classes in actions such as this, including the Tenth Circuit in a case involving fraudulent transfer claims asserted by a trustee. See In re Integra Realty Res., Inc., 354 F.3d 1246, 1266 (10th Cir. 2004). As the Tenth Circuit explained, the equitable relief of avoidance does not center on individualized determinations that vary among individual members of the class. Therefore, even if, *arguendo*, individual defenses might exist, the threshold question of whether avoidance is proper should be determined once, on a class-wide, non-opt-out basis.

Further, as multiple courts have explained, where the requirements of both Rule 23(b)(1)(B) (non-opt-out class) and Rule 23(b)(3) (opt-out class) are satisfied, the class should be certified as a non-opt-out class under Rule 23(b)(1)(B). Thus, even though Rule 23(b)(3)'s requirements of "predominance" and "superiority" plainly are satisfied here—common questions clearly predominate, and the proposed class members are spread throughout numerous jurisdictions and some may lack the resources or incentive to litigate—there is no need for the Court to reach those requirements, because all of the prerequisites for certification of a non-opt-out class under Rule 23(b)(1)(B) are satisfied.

Finally, now is the proper time to address and resolve the issue of class certification. The reasoning of the January 14, 2014 decision of this Court in the related Creditor Trust Action (defined herein) (the "**Creditor Trust Decision**"), in which the Court issued rulings on several central arguments also advanced by Defendants here, confirms that rulings on central issues— *e.g.*, establishing actual intent under Section 548(a)(1)(A), applicability of the collapsing doctrine—will apply uniformly to all Defendants, and the Court's ruling in a first individual action would effectively decide those issues for subsequent individual actions. The same is true with respect to the additional argument advanced by Defendants in this action, that the claims

2

asserted here purportedly were retained by the Reorganized Debtors rather than assigned to the Litigation Trust. With the Second Amended Complaint now on file, further adjudication of outstanding and anticipated legal issues should proceed on a class-wide basis.

For the foregoing reasons, and the further reasons set forth herein, the Litigation Trustee respectfully requests that the Court certify a non-opt-out defendant class under Rule 23(b)(1)(B).

## FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2010, the Litigation Trustee commenced this action by filing a complaint asserting claims for constructive and intentional fraudulent transfer under Section 548 of the Code (the "**Claims**") arising from the failed leveraged buyout of Lyondell by Basell (the "**Initial Complaint**").[1] The Initial Complaint (i) named as defendants the then-known and identified holders of Lyondell stock as of December 20, 2007 that had received at least $240,000 in consideration of their shares in connection with the Merger, and (ii) sought certification of a class of persons who received shareholder payments in connection with the Transaction (subject to certain exclusions enumerated therein). Although individuals and entities other than the named Defendants in this action orchestrated the Transaction,[2] it was the proposed Defendant class here that received the largest portion of the value transferred from the Debtors.[3]

On April 7, 2011, Defendants moved to dismiss the Initial Complaint (the "**Motion to Dismiss**"), arguing that the Claims had not been assigned to the Litigation Trust in the Third

---

[1] The Court's broad familiarity with the litigation arising from the Merger, over which litigation the Court has presided since its inception, is reflected in its recent Creditor Trust Decision. See Weisfelner v. Fund 1 (In re Lyondell Chem. Co.), 503 B.R. 348 (Bankr. S.D.N.Y. 2014) (such action, the "**Creditor Trust Action**"). The full procedural history of the litigation therefore is not repeated here.

[2] See Weisfelner v. Blavatnik, Adv. Pro. No. 09-1375 (Bankr. S.D.N.Y.) (the "**Blavatnik Action**").

[3] As noted in the Second Amended Complaint, a redacted version of which was filed publicly on April 18, 2014, the total amount of Shareholder Transfers sought to be recovered pursuant to this action is estimated to be substantially in excess of $6.35 billion. See Second Amended Complaint ¶ 2 n.2 [D.I. 753].

Amended Plan, but were instead retained by the Reorganized Debtors.[4]  In their motion, the Defendants also adopted a series of arguments that had been advanced in motions to dismiss filed by the shareholder defendants in the Creditor Trust Action, including that (i) actual fraudulent intent was not sufficiently alleged, (ii) the transfer did not implicate property of the Debtors, (iii) certain defendants were "mere conduits" and (iv) certain parties that had provided financing for the Transaction had ratified the transaction.  See Motion to Dismiss, at 20-23 [D.I. 163.][5]

On July 12, 2011, oral argument was held on the Motion to Dismiss.  Following argument, the Court ruled from the bench, denying the motion with respect to the assignment issue as made under Rule 12(b)(6) (and continuing the motion to the extent made under Rule 12(b)(1)), without prejudice to Defendants' ability to raise the issue on summary judgment or at trial.  See July 12, 2011 Hearing Tr. at 85:18-99:1.[6]  The Court did not rule on the other arguments advanced in the Motion to Dismiss.

On January 14, 2014, the Court issued the Creditor Trust Decision, ruling on several arguments that also have been advanced by Defendants in this action in their Motion to Dismiss.[7]  Most significantly, the Court denied the defendants' motions in the Creditor Trust Action to the

---

[4] Also on April 7, 2011, the Litigation Trustee filed under seal an updated version of the complaint that reflected the dropping of certain defendants following receipt of discovery confirming that they were merely conduits, as well as the discontinuance of claims against certain defendants pursuant to settlements.  [D.I. 282.]

[5] Defendants also argued in their Motion to Dismiss that Section 546(e) barred the Litigation Trustee's Section 548(a)(1)(B) constructive fraud claim in this action.  Following the ruling of the Second Circuit in Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V., 651 F.3d 329 (2d Cir. 2011), concerning the scope of Section 546(e), the Litigation Trustee elected not to move forward with that claim.  The Court ordered that the constructive fraudulent transfer count be dismissed without prejudice, subject to further consideration in the event of any change in controlling law, without entry of judgment pursuant to Rule 54(b) and without prejudice to the rights of others to seek to secure or oppose judgment at an appropriate time.  See Oct. 6, 2011 Order, ¶ 3, Adv. Pro. No. 10-05525, [D.I. 511].

[6] See also October 6, 2011 Order ¶¶ 1-4.

[7] A corrected version of the Creditor Trust Decision was issued on January 16, 2014.  [Adv. Pro. 10-4609 D.I. 1894.]

extent predicated on the argument that the Transaction did not implicate a transfer of Debtor property, and granted the motions to the extent that they argued that intent with respect to intentional fraudulent transfer was not adequately pled under state law—but allowed leave to re-plead to satisfy the relevant pleading standard.  See Creditor Trust Decision at 43-48, 54-64.

On February 4, 2014, a status conference was held with respect to actions brought by the Litigation Trust and Creditor Trust arising out of the Transaction.  Following the conference, the Court entered an order providing, *inter alia*, for the Litigation Trustee to file an amended complaints in the Creditor Trust Action and this action by April 7, 2014.  See Scheduling Order ¶3 [D.I. 746].[8]

On April 7, 2014, the Litigation Trust filed with Chambers under seal an amended complaint in this action (the "**Second Amended Complaint**"), which included, *inter alia*, extensive amended allegations with respect to intentional fraudulent transfer.[9]  In addition to naming 291 defendants, the Second Amended Complaint alleges a class under Federal Rule of Civil Procedure 23(a), 23(b)(1)(B) and 23 (b)(3), consisting, subject to certain exclusions,[10] of all persons or entities who directly, or indirectly through one or more mediate transferors, received payments on account of their shares of Lyondell in connection with the Transaction (the "**Class**").  See Second Amended Complaint ¶ 59.  The Second Amended Complaint raises multiple common legal and factual issues appropriate for class-wide resolution:

---

[8] The Scheduling Order also expressly provided, with respect to the ratification issue, that "[t]he parties shall reserve all rights to argue about the applicability of the Section IV of the Decision and Order – "Ratification by LBO Lender Creditors" – in the Litigation Trust Action."  See Scheduling Order  ¶1 [D.I. 746].

[9] A redacted version of the Second Amended Complaint was filed publicly on April 18, 2014.

[10] Excluded from the Class are (i) the Secured Lender Releasees and the Settling Defendant Releasees (as defined in the Plan), (ii) persons against whom claims under 11 U.S.C. § 548 are asserted in the Blavatnik Action; and (iii) any individual who served as an officer or employee of the Debtors as of December 15, 2009 that is entitled to a release in accordance with Section 11.8(A) or (B) of the Plan.  The total recovery sought in the Second Amended Complaint is estimated to be substantially in excess of $6.35 billion.  Second Amended Complaint ¶ 2, n.2.

i.  Whether Lyondell's 2007 Long Range Plan, in the form it was approved by the Board of Directors of Lyondell, included purposefully inflated and unreasonable projections in anticipation of a bid by Blavatnik to acquire Lyondell;

ii.  Whether Lyondell earnings projections were further purposefully and unreasonably inflated during an alleged "refreshing" of Lyondell's 2007 Long Range Plan in May, June and early July 2007, including in anticipation of a potential sale of Lyondell;

iii.  Whether modifications in May, June and early July, 2007 to Lyondell earnings projections were made with the intent to hinder, delay or defraud the creditors of LyondellBasell;

iv.    Whether the knowledge and intent of Dan Smith, Lyondell's then CEO and Chairman, with respect to, *inter alia*, the fabricated and manipulated Lyondell earnings projections, should be imputed, *inter alia*, to Lyondell;

v.    Whether individual members of the Board of Directors knew that the earnings projections in the 2007 Long Range Plan and the "refreshed" earning projections provided to Blavatnik had been purposefully and unreasonably inflated and were unattainable;

vi.  Whether the Merger was approved by the Board of Lyondell with the knowledge that the transactions that would be executed in connection therewith, including the making of the Shareholder Transfers, would result, *inter alia*, in the insolvency, financial demise and bankruptcy of LyondellBasell;

vii.  Whether Blavatnik, Access and Basell engaged in fraudulent misconduct and acted with intent to hinder, delay or defraud creditors of LyondellBasell in connection with the Merger;

viii.  Whether the Merger involved a transfer of property of the Debtors;

ix.  Whether in view of the capital structure that would result from the Merger, the economic conditions prevailing at the time of the Merger and the then forecasted outlook for petrochemicals and refining, the post-Merger financial demise of LyondellBasell was foreseeable at the time of the Merger;

x.  Whether LyondellBasell received no consideration in exchange for the Shareholder Transfers made to Transferees;

xi.  Whether, at the time that the Shareholder Transfers were made to the Transferees, LyondellBasell was insolvent, or became insolvent as a result of the Shareholder Transfers;

xii.  Whether LyondellBasell, at the time that the Shareholder Transfers were made, was engaged or was about to engage in a business or transaction for which remaining assets were unreasonably small in relation to the business or transaction; and

xiii.  Whether LyondellBasell, at the time the Shareholder Transfers were made, intended, believed, or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

Id. ¶ 62; see also id. ¶¶ 112-212.

This motion followed.

## ARGUMENT

This action should be certified as a defendant class action under Federal Rule of Civil Procedure 23 because (i) the action satisfies the four Rule 23(a) prerequisites of numerosity, commonality, typicality and fair and adequate representation, and (ii) the action qualifies for certification under Rule 23(b).[11]  As set forth herein, because the action qualifies both as a "mandatory" (i.e., non-opt-out) class under Rule 23(b)(1)(B) and an opt-out class under Rule 23(b)(3), it should be certified as a non-opt-out class action under Rule 23(b)(1)(B).  Finally, appropriate notice should be ordered by the Court.

## I.    CERTIFICATION OF DEFENDANT CLASSES UNDER RULE 23

It is well-established that defendant class actions may be maintained under Rule 23.[12] See, e.g., Marcera v. Chinlund, 595 F.2d 1231, 1238 (2d Cir. 1979) (affirming certification of defendant class), judgment vacated on other grounds by, 442 U.S. 915 (1979); U.S. Trust Co. of New York v. Alpert, 163 F.R.D. 409, 421-22 (S.D.N.Y. 1995) (certifying three defendant classes of bondholders); In re Broadhollow Funding Corp., 66 B.R. 1005 (Bankr. E.D.N.Y. 1986) (certifying defendant classes in action for declaratory judgment regarding equitable ownership of mortgages); Guy v. Abdulla, 57 F.R.D. 14, 16 (N.D. Ohio 1972) (certifying defendant class case involving recovery under preference and fraudulent transfer theories); Lynch Corp. v. MII

---

[11]  The Court itself observed, in response to defense counsel's argument that discovery concerning the identity of ultimate beneficial holders would be burdensome because there are a large number of such holders, that "[t]he implication of that, Mr. Anker, would be that, assuming you can get a sufficiently strong defendant class representation, that there should be a defendant class action." March 8, 2011 Hearing Tr. at 41:3-10 [D.I. 120].

[12]  Rule 23 of the Federal Rules of Civil Procedure applies in bankruptcy proceedings.  See Fed. R. Bankr. P. 7023.

Liquidating Co., 82 F.R.D. 478, 482-83 (D.S.D. 1979); see also In re Integra Realty Res., Inc.,

354 F.3d at 1266 (affirming bankruptcy court's certification of defendant class in fraudulent

conveyance and illegal distribution action); First Fed. of Michigan v. Barrow, 878 F.2d 912, 919

(6th Cir. 1989) (affirming certification of defendant class in avoidance action); In re Dehon, Inc.,

298 B.R. 206, 213 (Bankr. D. Mass. 2003) (certifying non-opt-out defendant class in action by

plan administrator to subordinate shareholder claims under the Bankruptcy Code).

As in a plaintiff class action, certification of a defendant class action requires the

satisfaction of (i) the four prerequisites under Rule 23(a) and (ii) at least one of the criteria for

"actions maintainable" under Rule 23(b).  This action overwhelmingly meets all requirements for

certification.

## II.    THE PROPOSED CLASS SATISFIES THE PREREQUISITES OF RULE 23(a).

Rule 23(a) provides that class certification is proper where (i) the class is so numerous

that joinder of all members is impracticable, (ii) there are questions of law or fact common to the

class, (iii) the claims or defenses of the representative parties are typical of the claims or

defenses of the class, and (iv) the representative parties will fairly and adequately protect the

interests of the class.  See Fed. R. Civ. P. 23(a).  Each prerequisite is comfortably satisfied here.

### A.    The Defendants in the Proposed Class Are So Numerous That Joinder is Impracticable.

The first of Rule 23(a)'s four prerequisites is that the proposed class be "so numerous that

joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While this is a "subjective

determination based on number, expediency and inconvenience of trying individual suits," see

In re Broadhollow, 66 B.R. at 1008 (internal quotation marks and citations omitted), numerosity

in the Second Circuit is "presumed at a level of 40 members," Consol. Rail Corp. v. Town of

Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (holding that a class of even 300 "vastly exceeds"

the "threshold" for numerosity); <u>see also</u> <u>Northwest. Nat. Bank of Minneapolis v. Fox & Co.</u>, 102 F.R.D. 507, 510 (S.D.N.Y. 1984) ("In light of the fact that the proposed class consists of over 300 persons widely scattered throughout the country, there can be little doubt that the numerosity requirement is satisfied in this case.").

Here, the number of proposed class members identified so far is approximately 32,000. <u>See</u> Second Amended Complaint ¶ 60.[13]  This figure is orders of magnitude more than the 40-person threshold required by the Second Circuit.  There is no question that the numerosity element is satisfied.

B.    There Are Multiple Significant Questions of Law or Fact Common to the Class.

The second of Rule 23(a)'s four prerequisites is that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy this element, it is necessary only for the party seeking certification to show that class members share "one or more significant common questions of fact or law."  <u>In re Broadhollow</u>, 66 B.R. at 1009 (internal quotation marks and citations omitted).  The Rule "does not require a class of clones in which members are identical".  <u>Id.</u>  That is, it "is not required that all factual or legal questions raised in the lawsuit be common so long as a single issue is common to all class members."  <u>In re Integra Realty Res., Inc.</u>, 179 B.R. 264, 270 (Bankr. D. Colo. 1995).

Here, there exist multiple critical and potentially case-dispositive factual and legal issues that are common to the class, as alleged in the Second Amended Complaint (and set forth above at pp.5-7).[14]  Because the potential for liability of each member of the class turns upon such issues (relating to conduct of parties who orchestrated the Transaction), as well as the assignment

---

[13]  This estimate is based in part upon a review by counsel for the Litigation Trustee of document discovery obtained formally and informally by the Litigation Trustee in an effort to identify members of the Class.

[14]  This uniformity was confirmed by the Creditor Trust Action, in which the reasoning which the Court adopted in addressing the issues of, <i>inter alia</i>, actual intent and collapsing, apply uniformly to the members of the Class alleged here.  <u>See</u> Creditor Trust Decision at 43-48, 54-64.

argument advanced by Defendants in their Motion to Dismiss, the commonality requirement is satisfied.[15]  See In re Integra, 179 B.R. at 270 (commonality requirement satisfied in defendant class action seeking avoidance of spin-off as fraudulent transfer, because "common questions must be resolved" and the answers to those threshold questions "are not dependent upon a particular defendant's defense"); U.S. Trust Co., 163 F.R.D. at 417 (commonality requirement satisfied where "the central questions in the case will almost certainly be . . . . common to all class members"); In re Broadhollow, 66 B.R. at 1009 (certifying defendant class of investors on basis of common factual and legal issues and noting that "a variance in the size of investment or the annual interest rate" does not defeat certification).

      C.      Any Potential Claimed Defenses of the Representative Parties Will Be Typical of the Defenses of the Class.

The third prerequisite under Rule 23(a) is that the "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is satisfied where "the defenses of the class representative are the same as the defenses of class members." In re Broadhollow, 66 B.R. at 1009-10; see also In re Integra, 179 B.R. 270 (typicality requirement satisfied where "there is a nexus between class representatives' claims or defenses and common questions of fact or law which unite the class"). "Only where there is a unique defense that will consume the merits of the case is the Court required to refuse to certify a class due to a typicality." In re Integra, 179 B.R. at 270.

Here, there are no individualized or unique defenses that will "consume" the merits of the case. In fact, based upon positions taken by Defendants in this action, it may be anticipated that the most significant "defense" advanced on behalf of all members of the class will be an

---

[15] Another potential common issue could arise if Defendants contest the Litigation Trustee's right to recover beyond the value of unpaid creditor claims. See Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.), 464 B.R. 606 (Bankr. S.D.N.Y. 2012).

attempted refutation of the Litigation Trustee's affirmative case through the adoption of factual and legal positions that apply uniformly across the entire class.  See Part II-B, supra.  Among such positions that already have been advanced, and which Defendants may continue to press, are (i) that the Claims purportedly were retained by the Reorganized Debtors instead of assigned to the Litigation Trustee, (ii) that the parties responsible for orchestrating the Transaction and challenged transfers did not act with the requisite intent, and (iii) that the funds used to make payments to the shareholders were not the property of the Debtors.

Under these circumstances, the typicality requirement is satisfied.  See In re Integra, 179 B.R. at 270 (typicality requirement satisfied where the "nature of the defenses to the claims arising out of the [challenged transfers] is typical of the defenses of the class members that the conveyances were not fraudulent and did not violate any applicable fraudulent conveyance law," and no unique defenses would "consume" resolution of the common issues); In re Broadhollow, 66 B.R. at 1009-10 (finding typicality requirement satisfied in defendant class action where plaintiff's "conduct toward all class members, including named defendants, was the same," while certifying subclasses based upon "conflict over the remedy sought"); see also U.S. Trust Co., 163 F.R.D. at 417 (typicality requirement satisfied because "within each of the three respective classes each class member's claim arises from the same course of events, and each class member will make similar legal arguments . . .") (internal quotation marks and citations omitted); Northwestern Nat'l Bank of Minneapolis v. Fox & Co., 102 F.R.D. 507, 513 (S.D.N.Y. 1984) (typicality requirement satisfied where claims against class members "rest on the same alleged instances of fraud").[16]

---

[16] No Defendant has identified any individual claimed defense that threatens to consume resolution of the case by overwhelming the common questions as to whether the transfers were fraudulent.  The Litigation Trustee anticipates that certain Defendants may raise a purported defense under Section 548(c) and attempt to dress it up as creating individualized issues regarding good faith.  However, such effort would be unavailing, as the Section 548(c)

11

D.    The Proposed Representatives Will Fairly and Adequately Represent the Class.

The fourth prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In a defendant class action, this requirement is satisfied where the class representatives have the resources and incentive to defend the litigation and their interests in the litigation do not conflict with and are not antagonistic to other class members. See U.S. Trust Co., 163 F.R.D. at 417-18; In re Broadhollow, 66 B.R. at 1011; In re Dehon, 298 B.R. at 215; In re Integra, 179 B.R. 270-71; Marcera, 595 F.2d at 1238-39; Luyando v. Bowen, 124 F.R.D. 52, 58 (S.D.N.Y. 1989).

As part of the inquiry into a proposed representative's resources and incentives, courts will examine (i) whether the representative has the financial resources to mount a defense, see In re Broadhollow, 66 B.R. at 1011; In re Dehon, 298 B.R. at 215, (ii) whether the size of the claims against the representative are sufficient incentive for it to mount a defense, see In re Broadhollow, 66 B.R. at 1011; In re Dehon, 298 B.R. at 215; (iii) whether the representative's counsel is "qualified, experienced and generally able to conduct the proposed litigation," see U.S. Trust Co., 163 F.R.D. at 417-18 (internal quotation marks and citations omitted); In re Broadhollow, 66 B.R. at 1012; and (iv) whether the class representatives and their counsel have conflicts of interest with other class members, see U.S. Trust Co., 163 F.R.D. at 417-18; In re Dehon, 298 B.R. at 215; see also Luyando, 124 F.R.D. at 58. Further, in applying Rule 23(a)(4) to defendant classes, courts have made clear that the provision "does not require a willing

---

requirement of "tak[ing] for value," see 11 U.S.C. § 548(c), is not satisfied here as a matter of law since no value was given to the Debtors, and in any event the resolution of this issue would involve a common legal question as to what constitutes "value" provided to the Debtors under these circumstances. Moreover, even if there were individualized defenses to resolve following the resolution of the threshold, class-wide question regarding whether the transfers were fraudulent transfers, those questions could be deferred until after resolution of the class question. Further, the Court has the authority, if necessary, to split the class into subclasses in the event one or more group of defendants claim to have defenses unique to their respective defendant group. See, e.g., In re Broadhollow, 66 B.R. at 1009-10 (stating that although certain subsets of the proposed class "are in conflict over the remedy sought, class certification need not be denied," and certifying sub-classes to avoid intra-class conflicts).

12

representative but merely an adequate one," see Marcera, 595 F.2d at 1239, so that "a defendant

class representative who vigorously opposes his representative status may prove his ability to be

an adequate class representative since he may reveal the capability to present an effective

adversary position," see In re Broadhollow, 66 B.R. at 1011 (internal citations omitted).

Here, it is clear that the Proposed Representatives (identified in Exhibit A attached hereto

("**Exhibit A**")) have the incentive and wherewithal to defend the claims against them and that

there are no conflicts between them and the remainder of the class.

First, the Proposed Representatives face substantial claims, providing ample incentive to

defend themselves (even if a defendant class were not certified).  Specifically, the claims against

the individual Proposed Representatives range from approximately $1 million to over $95

million, with an aggregated amount of over $690 million asserted against the Proposed

Representatives alone.  There is little question that the Proposed Representatives will have an

incentive to vigorously defend the claims asserted against them.

Second, the Proposed Representatives have ample resources to continue to defend the

action.  As an initial matter, 16 of these Proposed Representatives alone received over $10

million in connection with the challenged transaction alone, without even considering their other

assets.  See Exhibit A.  In any event, the Litigation Trustee believes that for the Proposed

Representatives as a whole, adequacy of resources to defend the action will not be an issue.[17]

Indeed, because they face common claims and will advance common arguments, see Part II-B,

---

[17] While the identities of many of the Proposed Representatives have been redacted to comply with a prior Court
order in this proceeding, the Litigation Trustee believes that most of the Proposed Representatives have resources of
a sufficient magnitude such that, even considered individually, there would be no question regarding their ability to
defend the action.  For example, certain of the Proposed Representatives appear from public websites to have assets
ranging into the billions of dollars.  To the extent that any Proposed Representative chooses to assert that it does not
have sufficient resources to defend this action, the Litigation Trustee is prepared to:  (i) take limited discovery of
such Proposed Representative concerning its asserts and/or (ii) submit to the Court information of which the
Litigation Trustee is aware concerning such Proposed Representative's assets.

supra, the Proposed Representatives have every inducement to pool their resources in the defense of common issues.

Third, counsel for the Proposed Representatives will be qualified, experienced and able to conduct the litigation. Rule 23(g) provides that a court certifying a class must appoint class counsel and that such counsel must be "adequate" as measured by the criteria of Rule 23(g)(1) and (4). See Fed. R. Civ. P. 23(g). Rule 23(g)(1) requires that such counsel be experienced, knowledgeable and committed to representation of the class; Rule 23(g)(4) requires that such counsel must be capable of fairly representing the interests of the class. See id. The Proposed Representatives are currently represented by 20 law firms, any number of which would easily satisfy these criteria. Among such firms is Wilmer Hale, which has served as the *de facto* lead defense counsel in this action since its commencement. Among the other firms that represent the Proposed Representatives are numerous prominent law firms, the websites for which indicate expertise in class action and other complex commercial litigation.[18] The requirement that counsel be "adequate" is satisfied. The Litigation Trustee proposes that, in the first instance, the Proposed Representatives and their respective counsel consult internally and thereafter confer with the Litigation Trustee's counsel in an effort to stipulate, subject to the Court's approval, to lead counsel or lead co-counsel for the Proposed Representatives.

Fourth, there is no conflict between the Proposed Representatives and the remainder of the proposed class. As demonstrated above, the common legal and factual issues turn on the actions of the third parties that orchestrated the Transaction, not the actions of members of the defendant class, so that liability and defenses on those common issues are uniform across the case. See Part II-B, supra. The Proposed Representatives and the remainder of the class all face

---

[18] For example, listed among the firms are Covington & Burling, LLP, Dechert LLP, Paul Weiss Rifkind Wharton & Garrison LLP, Ropes & Gray, Schulte Roth & Zabel, LLP and Wilkie Farr & Gallagher, LLP, all of which reference such experience on their websites. See Exhibit A.

common liability and thus common incentives in defending the action.  As the Second Circuit

observed in applying Rule 23(a)(4) to a defendant class, "where. . . the legal issues as to liability

are entirely common to members of the defendant class, there is little reason to fear unfairness to

absentees."  Marcera, 595 F.2d at 1239 (citation omitted); see also U.S. Trust Co., 163 F.R.D. at

418 (finding no basis to conclude that any representative would have an interest antagonistic to

its class).

The requirement of adequate representation is therefore satisfied here.[19]

## III.    A NON-OPT-OUT CLASS SHOULD BE CERTIFIED UNDER RULE 23(b)(1)(B).

Certification of a class requires, in addition to satisfaction of the four Rule 23(a)

prerequisites, that the action be maintainable as one of the "types" of class actions described in

Rule 23(b).  See Fed. R. Civ. P. 23(b) ("Types of Class Actions").  The type of class action

sought to be certified is critical as it ordinarily will determine (i) whether the class is mandatory

or opt-out, and (ii) the kind of notice that must be provided.  Any class maintainable under Rule

23(b)(1) or Rule 23(b)(2) proceeds on a mandatory basis.  As the 2003 Advisory Committee

Notes to Rule 23 provide, "[t]here is no right to request exclusion from a (b)(1) or (b)(2) class."[20]

As the Supreme Court has explained, the difference in the procedural treatment of the

different types of class actions arises from the differing justifications for class treatment.  Classes

certified under (b)(1) and (b)(2) are based on "the most traditional justifications for class

---

[19] In addition, to the extent that any absent class member believes that the Proposed Representatives will not adequately represent the class, such absent class member may appear in the proceedings to advance the arguments it wishes to present.  See, e.g., Wyandotte Nation v. City of Kansas City, KS, 214 F.R.D. 656, 664 (D. Kan. 2003) ("Although Rules 23(b)(1) and (2) do not afford absent class members the opportunity to opt out of the class, they may . . . directly enter their appearance to advance their own arguments if they desire to do so.").

[20] Because, as explained herein, only those classes that are maintainable solely under Rule 23(b)(3) should proceed under that provision, there is no need for the Court to reach the issue of whether the action can be certified under that provision, because it can be certified instead under Rule 23(b)(1)(B).  Only if, *arguendo*, the Court were to find that Rule 23(b)(1)(B)'s prerequisites were not satisfied here would there be a need to certify this action under Rule 23(b)(3), the requirements of which also are satisfied here.  See Part IV, infra.

15

treatment," namely that "individual adjudications would be impossible or unworkable, as in a (b)(1) class, or that the relief sought must perforce affect the entire class at once, as in a (b)(2) class." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2558 (2011). By contrast, Rule 23(b)(3) is "framed for situations in which class-action treatment is not as clearly called for [as Rule 23(b)(1) or 23(b)(2)]." Id. (internal quotation marks and citations omitted).

Owing to this distinction, "[Rule 23] provides no opportunity for (b)(1) or (b)(2) class members to opt out." 131 S. Ct. at 2558. By contrast, "[Rule 23(b)(3)], allows class certification in a much wider set of circumstances but with greater procedural protections. . . . [U]nlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory; class members are entitled . . . to withdraw from the class at their option." Id; see also Van Gemert v. Boeing Co., 590 F.2d 433, 439 n.11 (2d Cir. 1978) (en banc) ("The plaintiffs in the suit before us were certified as a 23(b)(1) class under the Federal Rules. No class member could have opted out of such a suit even if he had desired to do so . . ."), aff'd, 444 U.S. 472 (1980); In re School Asbestos Litig., 789 F.2d 996, 1002 (3d Cir. 1986) ("the most significant aspect of [a Rule 23(b)(1)(B)] class is its mandatory character. All those who come within the description in the certification become, and must remain, members of the class because no opt-out provision exists."); Larionoff v. United States, 533 F.2d 1167, 1186 n.44 (D.C. Cir. 1976) ("class members in Rule 23(b)(1) and Rule 23(b)(2) actions are not provided an opportunity by the rule to exclude themselves from the action"), aff'd, 431 U.S. 864 (U.S. 1977).[21]

---

[21] While the Second Circuit stated in McReynolds v. Richards-Cantave, 588 F.3d 790, 800 (2d Cir. 2009), that Rule 23 allows a court discretion to grant opt-out rights under Rule 23(b)(1) and (b)(2), the Supreme Court in Wal-Mart, as set forth above, subsequently explained that Rule 23(b)(1) and (b)(2) classes were intended to be mandatory. As discussed herein, the Wal-Mart decision curtails the use of certain types of "hybrid" classes in which certification of the class proceeds under a mandatory provision but opt-out rights are granted as a matter of discretion. See Part III-B, infra. In any event, even if, arguendo, broad discretion to grant opt-out rights under Rule 23(b)(1) survives Wal-Mart, it is clear that opt-out rights should not be granted here, for the reasons set forth in the Integra decision (discussed herein), including, inter alia, that the claims asserted here are avoidance claims arising out of the same leveraged buyout, such that the class necessarily is "cohesive" rather than "heterogeneous." See Part III-B, infra.

16

Beginning soon after the 1966 amendments to Rule 23 that established the current

distinctions between (b)(1), (b)(2) and (b)(3) classes, courts have certified defendant classes in

avoidance actions on a non-opt-out basis.  See Guy, 57 F.R.D. at 17 (certifying defendant class

under Rule 23(b)(1) in case involving recovery under preference and fraudulent transfer

theories); First Fed. of Michigan, 878 F.2d at 919 (affirming certification under Rule 23(b)(1) of

defendant class in avoidance action); In re Integra, 179 B.R. at 267 (affirming certification of

defendant class under Rule 23(b)(1)(B) in avoidance action).  Consistent with those cases, and

for the reasons set forth herein, the court should certify a non-opt-out defendant class under Rule

23(b)(1)(B) here.

      A.    The Action is Maintainable As a Non-Opt Out Class Action Under Rule
              23(b)(1)(B).

Rule 23(b)(1) provides for the maintenance of a class action where:

> prosecuting separate actions by or against individual class
> members would create a risk of:  . . .
>
> (B) adjudications with respect to individual class members that, as
> a practical matter, would be dispositive of the interests of the other
> members not parties to the individual adjudications or would
> substantially impair or impede their ability to protect their
> interests.

Fed. R. Civ. P. 23(b)(1).[22]  While it has been held that the mere possibility of a stare decisis

effect resulting from an initial adjudication does not suffice for certification under Rule

23(b)(1)(B), see, e.g., Tilley v. TJX Cos., Inc., 345 F.3d 34, 41-42 (1st Cir. 2003); Landau v.

Chase Manhattan Bank, 367 F.Supp. 992, 998 (S.D.N.Y. 1973), courts have recognized that

where the practical consequences of an initial ruling may go beyond a "mere possibility of stare

decisis," that can provide the basis for certification of a non-opt-out plaintiff or defendant class.

---

Finally, no basis exists here to grant opt-out rights to a particular, uniquely-situated defendant as in County of
Suffolk. v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir. 1990).

[22] Rule 23(b)(1)(B) is also well known as the provision under which classes are certified in cases involving recovery
of a "limited fund" that could be exhausted by individual actions.  See, e.g., U.S. Trust Co., 163 F.R.D. at 419.

See, e.g., Tilley, 345 F.3d at 43 ("'stare decisis plus' may . . . provide an adequate basis for class certification under Rule 23(b)(1)(B)"); see also Canadian St. Regis Band of Mohawk Indians by Francis v. State of N.Y., 97 F.R.D. 453, 458-59 (N.D.N.Y. 1983) (certifying defendant class action under Rule 23(b)(1)(B) because adjudications against individual defendants could cloud title to land owned by similarly-situated landowners that were not parties to the lawsuit); Oneida Indian Nation of Wisconsin v. State of N.Y., 85 F.R.D. 701, 708 (N.D.N.Y. 1980) (same).

Taking into account the practical consequences of rulings in individual actions, courts have found that where there is uniformity among the claims being asserted, rulings issued in initial individual actions will often "as a practical matter" be dispositive of the outcome of subsequent individual actions. See 6A Federal Procedure § 12:182. For example, this reasoning was relied upon in Sessions v. Owens-Illinois, Inc., 267 F.R.D. 171 (M.D. Pa. 2010), to permit maintenance of a Rule 23(b)(1)(B) plaintiff class action involving allegedly wrongful denial of retirement benefits in violation of ERISA. The court found that plaintiffs in any action brought based on the alleged wrongful treatment "would all advocate the same legal theory, with claims arising from the same events and the same course of conduct." 267 F.R.D. at 179. Furthermore, "[a]djudication of their claims would require a court to evaluate defendants' conduct, which was uniform with respect to each [class member]." Id. Given the uniformity of legal and factual arguments across the entire class, the court found certification under Rule 23(b)(1)(B) appropriate. Id.

Based on similar reasoning, in Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co., 98 F.R.D. 254 (D. Del. 1983), the District of Delaware certified a plaintiff class under Rule 23(b)(1)(B) for the purpose of interpreting consent decrees that it had entered. The court found that although parties who were not members of the proposed class would not otherwise

18

necessarily be bound by its ruling, other courts would "most likely" rely on the court rulings which involved the construction of a prior judgment. The court found it important that "there are no factual differences among the [proposed class members] that will require individualized interpretations of the [consent decrees]. The decrees will have the same meanings for all parties." 98 F.R.D. at 273. Quoting <u>Newberg on Class Actions</u>, the court stated that "the stare decisis effect of a judgment with respect to the claim of one individual is likely to have a compelling impact on future litigation by persons similarly situated, <u>since no real individual issues exist to distinguish the earlier precedent</u>." <u>Id.</u> at 273 (quoting 1 H. Newberg, <u>On Class Actions</u>, § 1140(a)) (emphasis added).

It was based on such reasoning that the Tenth Circuit in <u>In re Integra Realty Res., Inc.</u>, 354 F.3d 1246 (10th Cir. 2004), upheld certification under Rule 23(b)(1)(B) of a defendant class of shareholders-recipients of alleged fraudulent transfers made, as here, pursuant to a single transaction. The Tenth Circuit explained that the "bankruptcy court properly certified the class under Rule 23(b)(1)(B), based on the court's conclusion that, in the absence of class certification, the Litigation Trustee's first suit against a defendant or group of defendants could be dispositive of all remaining suits." <u>Id.</u> at 1264. Noting the general rule that the "mere possibility" of a stare decisis effect on future defendants was an insufficient rationale, the Tenth Circuit considered multiple factors that demonstrated the existence of a sufficient rationale for proceeding under Rule 23(b)(1)(B). First, the Tenth Circuit found it significant that the question of whether the share distribution was a fraudulent transfer or unlawful distribution was "entirely independent of the identity of the defendant shareholder," so that as a "mere passive recipient" of the stock, a defendant would have only a few individual defenses, such as being a "conduit." <u>Id.</u> Accordingly, the legal and factual issues decided in an initial individual adjudication would "not

only form the basis for the application of stare decisis in subsequent cases; they would almost inevitably prove dispositive in those cases," and certification under Rule 23(b)(1)(B) therefore was proper.  Id. The Tenth Circuit also found it significant that if the trustee were to proceed against the defendants individually rather than as a class, "he would likely do so in a single forum," which "further increases the likelihood that the first case would prove dispositive." Integra, 254 F.3d at 1264; see also 2 Newberg on Class Actions § 4:17 (5th ed.) (stating that "precedent plus some other practical factor may qualify a case for Rule 23(b)(1)(B) class certification" and citing Integra).

As in Integra, the present case does not involve simply "a mere possibility" that the earliest final ruling issued in a shareholder action involving the Transaction would be dispositive of all of the key issues in a hypothetical subsequent litigation.  Instead, it is a virtual certainty that the earliest ruling on the issue of whether the shareholder transfers made in the Transaction were fraudulent transfers under Section 548(a)(1)(A) would be dispositive of that issue in subsequent individual actions.  This is so because, among other reasons, any such actions would involve identical factual and legal issues and would in all likelihood be resolved before this Court (or the District Court) based on the same evidentiary record.   Thus, the considerations that led to the affirmation of a mandatory class certification order in Integra, apply with at least as much, if not more, force here.

B.    Certification on a Non-Opt-Out Basis Is Consistent With Considerations Underlying the Distinction Between Mandatory and Opt-Out Classes.

Certification of a defendant class on a non-opt-out basis is not only correct under Rule 23(b)(1)(B), it also is consistent with broader Rule 23 policies regarding opt-out rights.  As noted above, beginning soon after the 1966 amendment of Rule 23 establishing (b)(1), (b)(2) and (b)(3) classes, courts have certified defendant classes in avoidance actions on a non-opt-out basis.  See

In re Integra, 354 F.3d at 1246; Guy, 57 F.R.D. at 17-18 (certifying defendant class case involving recovery under preference and fraudulent transfer theories); First Fed. of Michigan, 878 F.2d at 919 (affirming certification of defendant class in avoidance action). While the analysis relied upon in the avoidance action cases has developed between Guy and Integra, the outcomes should be no surprise: courts considering the granting of opt-out rights have long drawn a distinction, based on due process concerns and policy considerations, between *cohesive* mandatory classes and *heterogeneous* opt-out classes. See, e.g., Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 249 (3d Cir. 1975) ("By the very nature of a heterogeneous (b)(3) class, there would be many instances where a particular individual would not want to be included as a member of the class. To respect these individual interests, Rule 23(c)(2) was written to afford an opportunity to every potential member to opt out of the class"); see also Wal-Mart Stores, Inc., 131 S. Ct. at 2557 (stating that under the structure of Rule 23, "we think it clear that individualized monetary claims belong in Rule 23(b)(3)" rather than Rule 23(b)(1) or Rule 23(b)(2), and explaining that, by contrast, there is no need for Rule 23(b)(3)'s protections when "a class seeks an indivisible injunction benefitting all its members at once").

This distinction between "cohesive" and "heterogeneous" classes is illustrated by the body of cases involving certification of so-called "hybrid" class actions—a certification practice impacted by the 2011 decision of the Supreme Court in Wal-Mart Stores, Inc., 131 S. Ct. at 2557. One type of hybrid is a class certified under a mandatory provision of Rule 23 but with opt-out rights nevertheless granted in order to address due process concerns that may arise from individualized money damage issues. See generally Brown v. Ticor Title Ins. Co., 982 F.2d 386, 392 (9th Cir. 1992) (holding that following settlement of plaintiff class certified under Rule 23(b)(1) and 23(b)(2), lack of opt-out right meant that under rule of Phillips Petroleum Co. v.

Shutts, 472 U.S. 797 (1985), settlement would be res judicata only as to injunctive relief and not

as to claims for monetary damages), cert. dismissed as improvidently granted by, 511 U.S. 117

(1994)).  In determining whether to grant opt-out rights in hybrid cases, courts distinguished

primarily between actions involving a "cohesive" class (for which opt-out rights would not be

granted) and actions in which class cohesiveness was destroyed by individual claims for money

damages, which by their very nature involve individualized determinations concerning the

degree to which an individual is at fault for causing harm to another.  Compare Eubanks v.

Billington, 110 F.3d 87, 96 (D.C. Cir. 1997) (affording discretion to grant opt-out rights in a

Rule 23(b)(2) class where "the assumption of cohesiveness for purposes of injunctive relief that

justifies certification as a (b)(2) class is unjustified as to claims that individual class members

may have for monetary damages") with Thomas v. Albright, 139 F.3d 227, 235-36 (D.C. Cir.

1998) (reversing district court decision to grant opt-out rights in a Rule 23(b)(2) action, finding

that the "presumption of cohesiveness" that provides the basis for Rule 23(b)(2) class treatment

had not been rebutted, nor had there been a showing that any defendant was "so atypical" as to

require opt-out rights); see also LaFlamme v. Carpenters Local No. 370 Pension Plan, 212

F.R.D. 448, 459 n.8 (N.D.N.Y. 2003) (rejecting request for opt-out rights in Rule 23(b)(2) class

because "no . . . highly individualized concerns over damages [are] present" and noting that

"[a]ssuming the class prevails, it is true that some specific evidence will need to be eventually

adduced to determine the recalculation of benefits, but this form of individualized determination

is much more limited, and is more akin to restitution than it is to money damages"), aff'd, 127 F.

App'x 3 (2d Cir. 2005).  In Wal-Mart, the Supreme Court observed that because certification of a

non-opt-out class involving individual money damage claims could implicate Due Process

concerns, the proper course was simply to certify individualized money damage claims under Rule 23(b)(3), which provides for opt-out rights. <u>Wal-Mart Stores, Inc.</u>, 131 S. Ct. at 2559.

Insofar as relevant to class certification purposes, an avoidance action is fundamentally different than an individualized money damages action and fits squarely and uncontroversially on the "cohesive" rather than "heterogeneous" side of the divide. Its "'legislative theory'" is "'cancellation, not the creation of liability for the consequences of a wrongful act.'" <u>Branch v. F.D.IC.</u>, 825 F. Supp. 384, 419 (D. Mass. 1993) (quoting <u>Robinson v. Watts Detective Agency</u>, 685 F. 2d 729, 738 (1st Cir. 1982)). As the Tenth Circuit explained in <u>Integra</u>,

> [t]his distinction is relevant for our due process analysis because, unlike the typical class action damage case, where the individual circumstances of each class member are typically of material importance, it is virtually never the case that the proceeds of a single fraudulent transfer or unlawful dividend would be recoverable from one defendant shareholder but not from another. . . . The culpability of individual defendants is of no consequence in this analysis.

<u>In re Integra</u>, 354 F.3d at 1265 (internal quotation marks and citations omitted). Further, in an avoidance action, the trustee recovers from the transferee "the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). Identifying the property transferred, or its value, does not involve individualized liability determinations. <u>See In re Integra</u>, 354 F.3d at 1265 (explaining that in a fraudulent transfer action based on distributions to shareholders, judgment is calculated according to a "common formula or guideline") (internal quotations omitted). The question is whether the challenged transfer is voidable and may be cancelled by the Court under its equitable powers—not whether one or another individual class member has "wronged" the plaintiff so that compensation must be determined. It therefore does not implicate the concerns that underlie the grant of opt-out rights in money damages actions, but

involves instead a "cohesive" class, in which the central question—whether the transaction should be equitably cancelled—can be resolved once, on a class-wide basis.

## IV.    BECAUSE IT QUALIFIES UNDER BOTH RULE 23(b)(1)(B) AND RULE 23(b)(3), THE ACTION SHOULD BE CERTIFIED UNDER RULE 23(b)(1)(B).

Where a defendant class would qualify for certification under either Rule 23(b)(1) or Rule 23(b)(3), the class should be certified as a non-opt out defendant class under Rule 23(b)(1), to "promote judicial economy and prevent the class action device from becoming ineffective as a result of numerous opt-outs . . . ." In re Integra, 354 F.3d at 1266; see also Robertson v. NBA, 556 F.2d 682, 685 (2d Cir. 1977) ("when a class action may be certified under either (b)(1) or (b)(3), the former should be chosen when to do so will avoid the inconsistent adjudication or compromise of class interests that might otherwise occur"); In re Integra, 179 B.R. at 271 ("If class certification is found to be appropriate under both 23(b)(1) to eliminate the risk of inconsistent rulings or 23(b)(3) where common questions of fact predominate, the Court must choose 23(b)(1) to avoid inconsistent adjudications."); In re Broadhollow, 66 B.R. at 1013; 2 Newberg on Class Actions § 5:26 (5th ed.) (citing "judicial economy" as an adjudicatory goal that favors certification of a defendant class under Rule 23(b)(1) rather than 23(b)(3)); but c.f. Consol. Rail Corp. v. Town, 47 F.3d. at 484-85 (upholding certification under Rule 23(b)(3) and declining to address whether Rule 23(b)(1) would have been proper).

Proceeding in this manner ensures consistency and protects against the harms that Rule 23(b)(1) is designed to avoid. See In re Broadhollow, 66 B.R. at 1013 ("If this action were certified under Rule 23(b)(3), the members of the class could opt out pursuant to Rule 23(c)(2), vitiating the certification process and undermining the chances that this litigation will resolve the common issue"); see also First Fed. of Michigan, 878 F.2d at 919; 2 Newberg on Class Actions, § 5:26 (5th ed.) ("to certify a defendant class under Rule 23(b)(3) risks enabling each defendant

24

simply to opt out"). Therefore, because, as demonstrated above, this action qualifies under Rule 23(b)(1)(B), it should be maintained under that provision and there is no need to satisfy the requirements of Rule 23(b)(3).

## V.    IN THE ALTERNATIVE, CLASS CERTIFICATION IS PROPER UNDER RULE 23(b)(3).

Nevertheless, if, *arguendo*, the Court declines to certify this action under Rule 23(b)(1)(B), certification under Rule 23(b)(3) would be appropriate.   A class action may be maintained under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members" (the "predominance" requirement) and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement).   Fed. R. Civ. P. 23(b)(3).   Both requirements are satisfied here.

### A.    Predominance

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).   Where a "class is united by common issues of law and fact that are determinative of liability and causation . . . this is more than sufficient to satisfy predominance." In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 140 (2d Cir. 2001), cert. denied, 536 U.S. 917 (2002), overruled on other grounds by In re IPO Sec. Litig., 471 F.3d 24 (2d Cir. 2006)).   That is, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157 (S.D.N.Y. 2002) (internal quotation marks and citations omitted); see also Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 F.R.D. 48, 52 (S.D.N.Y. 1987) (courts may

"focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions.") (internal quotation marks and citations omitted); 5 <u>Moore's Federal Practice</u> § 23.46[2] [a] (3d ed. 1997) ("if common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied even if individual damages issues remain.") (citation omitted).[23]

Here, as demonstrated above, the central liability determination rests upon facts common to the entire class, including the actions of the parties that orchestrated the Transaction and shareholder payments. <u>See</u> Part II-B, <u>supra</u>. Under these circumstances, where liability can be determined class-wide and any Defendant-specific issues are less significant, the predominance requirement is satisfied. <u>See</u> <u>In re Integra</u> 179 B.R. at 272 (predominance requirement satisfied where questions concerning whether challenged spin-off was fraudulent transfer could be resolved class-wide and "individual or special defenses can be determined in possible subclass proceedings or in separate actions"); <u>Endo v. Albertine</u>, 147 F.R.D. 164, 171 (N.D. Ill. 1993) (finding predominance requirement satisfied in certifying defendant class of underwriters in securities fraud action, because issues concerning the alleged fraud were common to entire class and predominated over individual issues).

B.    <u>Superiority</u>

Courts have held that the following four factors listed under Rule 23(b)(3) bear on the superiority determination but are "non-exhaustive":    (i) the class members' interest in individually controlling their defenses in separate actions, (ii) the extent and nature of any pre-

---

[23] By contrast, in cases where the predominance requirement is not satisfied, the individualized issues predominate over the common issues. <u>See, e.g.</u>, <u>In re Motors Liquidation Co.</u>, 447 B.R. 150, 158 (Bankr. S.D.N.Y. 2011) (Gerber, J.) (finding predominance requirement not satisfied where there existed a variety of ways that specific individuals were harmed under apartheid).

existing litigation against the class, (iii) the desirability of concentrating the litigation in a particular forum, and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); Bolanos, 212 F.R.D. at 158 (citing 7A C. Wright & A. Miller, Federal Practice & Procedure: Civil 2d § 1777 at 519–20 (3d ed. 2014)).

Here, the four factors illustrate the superiority of a class action. First, there is no "individual interest" in separately controlling the litigation substantial enough to outweigh the efficiency of class-wide adjudication, because, as set forth in Part II-B, supra, liability can be determined on a uniform class-wide basis and there are no significant individualized defenses. Second, the question of pre-existing litigation is not dispositive here, as the Section 548(a)(1)(A) claim asserted in this action against the defendant class is not asserted against the defendant class in any other litigation, and the state law creditor claims asserted against the former Lyondell shareholders are currently pending before this Court, making class resolution of this matter in the same forum efficient. Third, the desirability of proceeding in a single forum weighs strongly in favor of certification here, where the forum in question is the same forum where the related state law creditors' actions and the underlying Blavatnik Action are being adjudicated. Finally, there are no difficulties in managing a class so extreme as to require denial of certification.

In any event, courts have made clear that these four factors are "not exhaustive," see Bolanos, 212 F.R.D. at 158, and the underlying concern is efficiency. See In re LILCO Secs. Litig., 111 F.R.D. 663, 667-68 (E.D.N.Y. 1986) ("Satisfaction of both [predominance and superiority] elements will ensure that economies of time and money can be achieved by allowing a few representatives to proceed on behalf of a larger whole and that the most efficient method of adjudicating the lawsuit fairly is by class action."). With approximately 32,000 potential class members, claims against all of whom involve common factual and legal issues on which liability

27

will turn, the choice to proceed through a defendant class action litigated in the same forum where the related adversary proceedings are pending is clearly more efficient and sensible than alternative scenarios involving thousands of individual actions.  See In re Itel Secs. Litig., 89 F.R.D. 104, 114 (N.D. Cal. 1981) (finding superiority requirement satisfied because "[j]udicial economy will be greatly served by having only two actions to determine common questions. Otherwise, the Court is potentially faced with 217 actions, (104 identical actions and 113 identical actions) litigating the common issues"); In re Integra, 179 B.R. at 272 (finding that Rule 23(b)(3) requirements are satisfied because "[t]his is not a case where individual rather than common issues will predominate such that there will be a loss of economy and efficiency").[24] The superiority requirement is satisfied here.

## VI.    NOTICE TO THE PROPOSED CLASS

Upon certification, notice should be issued to the defendant class.  That is so whether the class is certified under Rule 23(b)(1) or, *arguendo*, certified instead under Rule 23(b)(3).

Rule 23(c) provides that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A) (emphasis added).  There is no provision in the Rule specifying what any notice should contain for a non-opt out class or what form it should be sent in (although for reasons discussed earlier, such notice would not include a right to opt out, see Part III, supra).  This Court can be guided, however, by several Rule 23(b)(1) cases in which a court exercised its discretion under Rule 23 to require notice.

---

[24] In addition, provisional certification of the class does not prevent the Court from revisiting that decision at a later date, should class treatment unexpectedly prove less efficient than individual litigation.  See Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a [class] certification order is entered, the [district] judge remains free to modify it in the light of subsequent developments in the litigation."), aff'd sub nom., Falcon v. Gen. Tel. Co., 815 F.2d 317 (5th Cir. 1987); see also Cordes & Co. Fin.Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 n.9 (2d Cir. 2007) (a certifying court "can always alter, or indeed revoke, class certification at any time before final judgment is entered should a change in circumstances" render a class action no longer appropriate); In re Integra, 354 F.3d at 1261 ("a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment").

In <u>In re Integra</u>, the bankruptcy court ordered the parties to confer and submit to the court a form of proposed notice, after which the plaintiff would send such notice "by first class mail to all class members whose names and addresses are then known." 179 B.R. at 273. Thereafter, plaintiff was ordered to "provide such notice by first class mail to remaining class members whose names and addresses can be identified through reasonable effort within a reasonable time after they are identified." <u>Id.</u> Finally, the court noted that "[i]n requiring this notice, the Court is not implying that receipt of such notice is required to bind a defendant to any judgment herein." <u>Id.</u> Courts have ordered similar notice in other Rule 23(b)(1) cases. <u>See</u> <u>In re Dehon</u>, 298 B.R. at 219 (ordering notice to be sent by first class mail to "every ascertainable member of the Class that filed a Proof of Claim" in action for subordination of such claims); <u>Wyandotte Nation</u>, 214 F.R.D. at 664 (requiring notice to be sent through first class mail and publication in Rule 23(b)(1)(B) defendant class action); <u>Canadian St. Regis Band of Mohawk Indians by Francis</u>, 97 F.R.D. at 461-62 (requiring that notice be sent through first class mail and publication to an 810-member defendant class).[25]

Here, the members of the proposed Class who received the majority of the Merger Consideration already have received a form of notice of this action from the Creditor Trustee in connection with their status as defendants in the Creditor Trust Action. That notice, sent by the Creditor Trustee in January 2012 to approximately 1,900 defendants in the Creditor Trust Action (alleged to have received $6.3 billion in Merger Consideration), advised recipients of the pendency of this action and the Litigation Trustee's intent to seek class certification, and provided a link to the website concerning this action on which defendants have

---

[25] The Litigation Trustee submits only that the Court should direct notice as a matter of discretion, not that it is required to do so under Rule 23, the Constitution or some other authority. <u>See</u> <u>U.S. Trust Co.</u>, 163 F.R.D. at 419-422 (declining to require notice in class certified under Rule 23(b)(1)).

been able to access the complaint.  See [Adv. Pro. No. 10-4609 D.I. 671, 672, 760]; see also

http://www.kccllc.net/lyondellshareholderclawback.[26]

The Litigation Trustee believes that upon certification of a defendant class under Rule

23(b)(1)(B), further reasonable efforts to afford notice would be appropriate.  In particular, the

Litigation Trustee submits that the mailing of a form notice to Defendants apprising them of the

nature of the action, the definition of the class, the class issues and defenses, the right to enter an

appearance through an attorney, and the binding effect of a class judgment, would be

appropriate.  The Litigation Trustee is prepared to submit a proposed form of such notice to

reflect the particularities of the Court's decision on class certification, should a Rule 23(b)(1)(B)

class be certified.

In the case of certification, alternatively, under Rule 23(b)(3), the analysis is

straightforward because the rule itself provides specific guidance.  In particular, Rule 23(c)

provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class

members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The rule further specifies that the notice "must clearly and concisely state in plain, easily

understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the

class claims, issues, or defenses; (iv) that a class member may enter an appearance through an

attorney if the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

of a class judgment on members under Rule 23(c)(3)."  Id.  While the Litigation Trustee believes

there is no need to reach Rule 23(b)(3) class notice issues because the class should instead be

---

[26] Such website is being updated to include, *inter alia*, the currently filed Second Amended Complaint in this action.

certified under Rule 23(b)(1), he would be prepared to submit a proposed form of notice

satisfying the requirements of Rule 23(b)(3) should the Court, *arguendo*, certify a defendant

class under that section of Rule 23.


## <u>CONCLUSION</u>

For the foregoing reasons, the Litigation Trustee requests that the Court grant this

Motion.

Dated: May 8, 2014
        New York, New York

                                        EDWARD S. WEISFELNER, AS LITIGATION
                                        TRUSTEE OF THE LB LITIGATION TRUST

                                        By: /s/  Sigmund S. Wissner-Gross
                                            Sigmund S. Wissner-Gross
                                            May Orenstein
                                            Marek P. Krzyzowski
                                            BROWN RUDNICK LLP
                                            Seven Times Square
                                            New York, NY 10036
                                            (212) 209-4800

                                            -and-

                                            Steven D. Pohl
                                            BROWN RUDNICK LLP
                                            One Financial Center
                                            Boston, MA 02111
                                            (617) 856-8200

                                            *Counsel for Edward S. Weisfelner, as*
                                            *Litigation Trustee of the LB Litigation Trust*

## EXHIBIT A: PROPOSED CLASS REPRESENTATIVES[1]

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| MUTUAL FUND 20 | 1,992,675 | $95,648,400 | DECHERT LLP |
| MUTUAL FUND 21[2] | 1,488,632 | $71,454,336 | DECHERT LLP |
| MUTUAL FUND 22 | 1,180,029 | $56,641,392 | DECHERT LLP |
| PSAM WORLD ARBRITRAGE MASTER FUND LTD. | 1,153,348 | $55,360,704 | WILLKIE FARR & GALLAGHER, LLP |
| F/A/O FNY SEC/HLW GROUP A/K/A FIRST NEW YORK SECURITIES, LLC | 732,400 | $35,155,200 | WILMERHALE |
| TOURADJI GLOBAL RESOURCES MASTER FUND, LTD | 721,384 | $34,626,432 | WILLKIE FARR & GALLAGHER, LLP |

---

[1] In the event it is determined that a Proposed Class Representative received more Merger Consideration than alleged, the Litigation Trustee seeks all Merger Consideration received.  To the extent any Proposed Class Representative contends that an affiliate of such Proposed Class Representative received some or all of the Merger Consideration such Proposed Class Representative is alleged to have received, each such Proposed Class Representative is defined for purposes of the Second Amended Complaint and this Motion to also include any affiliate of such Proposed Class Representative that in fact received Merger Consideration.  To the extent that any Proposed Class Representative contends that the full or correct current name of such Proposed Class Representative has not been set forth in the Second Amended Complaint or this Motion, the Litigation Trustee reserves the right to make further amendments as appropriate.

[2] In instances where the Proposed Class Representative received Merger Consideration in more than one account, the Proposed Class Representative is listed more than once in this Chart.  In such circumstances, the Litigation Trustee seeks to claw back the aggregate Merger Consideration from all accounts.

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| ALLEN ARBITRAGE LP N/K/A ALLEN GLOBAL PARTNERS LP | 616,000 | $29,568,000 | PILLSBURY WINTHROP SHAW PITTMAN, LLP |
| FARALLON CAPITAL A/K/A FARALLON CAPITAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.; AND/OR FARALLON CAPITAL INSTITUTIONAL PARTNERS III, L.P. | 571,600 | $27,436,800 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
| LITESPEED MASTER FUND LTD. | 517,300 | $24,830,400 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
| FARALLON CAPITAL A/K/A FARALLON CAPITAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.; AND/OR FARALLON CAPITAL INSTITUTIONAL PARTNERS III, L.P. | 500,300 | $24,014,400 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| ALPINE ASSOCIATES A/K/A ALPINE ASSOCIATES, A LIMITED PARTNERSHIP | 475,000 | $22,800,000 | THOMPSON HINE LLP |
| MUTUAL FUND 23 | 402,056 | $19,298,688 | DECHERT LLP |
| ALLEN ARBITRAGE OFFSHORE N/K/A ALLEN GLOBAL PARTNERS OFFSHORE | 384,000 | $18,432,000 | PILLSBURY WINTHROP SHAW PITTMAN, LLP |
| PSAM EUROPE MASTER FUND, LTD. | 297,894 | $14,298,912 | WILLKIE FARR & GALLAGHER, LLP |
| FUND 2 | 250,000 | $12,000,000 | PORTER & HEDGES LLP |
| MUTUAL FUND 8 | 232,800 | $11,174,400 | DECHERT LLP |
| WABASH HARVEST PARTNERS LP | 207,088 | $9,940,224 | SCHULTE ROTH & ZABEL, LLP |
| HARVEST CAPITAL LP | 138,988 | $6,671,424 | SCHULTE ROTH & ZABEL, LLP |
| BROKER-DEALER 2 | 130,500 | $6,264,000 | WILMERHALE |
| PENSION FUND 3[3] | 130,407 | $6,259,536 | WILMERHALE |

---

[3] Though a notice of appearance has not been filed on behalf of Pension Fund 3 in this Action, Wilmer Hale represents this entity in a related adversary proceeding, Weisfelner v. Fund 1 (Adv. Pro. No. 10-04609), in which Pension Fund 3 is alleged to have similarly received $6,259,536 in Shareholder Payments.

3

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| MUTUAL FUND 7 | 117,300 | $5,630,400 | WILMERHALE |
| MUTUAL FUND 24 | 112,500 | $5,400,000 | DECHERT LLP |
| TOURADJI DIVERSIFIED MASTER FUND LTD. | 111,780 | $5,365,440 | WILLKIE FARR & GALLAGHER, LLP |
| FAMILY FOUNDATION 2 | 110,000 | $5,280,000 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
| KDC MERGER ARBITRAGE MASTER A/K/A KDC MERGER ARBITRAGE FUND L.P. | 100,000 | $4,800,000 | PETRILLO KLEIN & BOXER LLP |
| CORPORATION 4 | 98,757 | $4,740,336 | K&L GATES LLP |
| MUTUAL FUND 25 | 83,581 | $4,011,888 | DECHERT LLP |
| VTRADER PRO, LLC | 82,900 | $3,979,200 | LITMAN, ASCHE & GIOIELLA, LLP |
| MUTUAL FUND 26 | 80,835 | $3,880,080 | DECHERT LLP |
| MUTUAL FUND 5 | 78,346 | $3,760,608 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |

4

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| ZLP MASTER OPPORTUNITY FUND LTD. | 77,300 | $3,710,400 | DENTONS |
| NOONDAY CAPITAL PARTNERS LLC | 77,300 | $3,710,400 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
| MUTUAL FUND 12 | 64,200 | $3,081,600 | WILMERHALE |
| FARALLON CAPITAL A/K/A FARALLON CAPITAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.; AND/OR FARALLON CAPITAL INSTITUTIONAL PARTNERS III, L.P. | 63,200 | $3,033,600 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
| DOFT & CO., INC. FIRM ACCOUNT | 62,672 | $3,008,256 | WILMERHALE |
| SANO INVESTMENTS LLC | 60,627 | $2,910,096 | SADIS & GOLDBERG LLP |
| MJR PARTNERS | 60,000 | $2,880,000 | WILMERHALE |
| JOHN DEERE PENSION TRUST | 58,000 | $2,784,000 | K&L GATES LLP |

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| TRACK DATA CORPORATION | 57,700 | $2,769,600 | DUANE MORRIS LLP |
| BROKER-DEALER 3 | 51,400 | $2,467,200 | WILMERHALE |
| GABELLI ASSOCIATES[4] | 50,000 | $2,400,000 | ENTWISTLE & CAPPUCCI LLP |
| MUTUAL FUND 11 | 42,613 | $2,045,424 | ROPES & GRAY LLP |
| FUND 6 | 40,000 | $1,920,000 | WILMERHALE |
| EQUITY OVERLAY FUND LLC | 39,500 | $1,896,000 | K&L GATES |
| TALIESIN CAPITAL PARTNERS LP | 37,276 | $1,789,248 | COVINGTON & BURLING LLP |
| MUTUAL FUND 9 | 36,900 | $1,771,200 | DECHERT LLP |

---

[4] Gabelli Associates was identified as "Bear Sterns & Co. F/A/O Gabelli Associates" in the Second Amended Complaint [Docket No. 753].

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| FUND 10 | 35,000 | $1,680,000 | WILMERHALE |
| FARALLON CAPITAL A/K/A FARALLON CAPITAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS, L.P.; FARALLON CAPITAL INSTITUTIONAL PARTNERS II, L.P.; AND/OR FARALLON CAPITAL INSTITUTIONAL PARTNERS III, L.P. | 34,300 | $1,646,400 | KLEINBERG, KAPLAN, WOLFF & COHEN, P.C. |
| FIRST NY SECURITIES / BRITALLY CAPITAL A/K/A FIRST NEW YORK SECURITIES, LLC | 33,355 | $1,601,040 | WILMERHALE |
| WILLIAM J HARKINSON & SARAH A HARKINSON TEN/COM | 32,339 | $1,552,293 | PORTER & HEDGES LLP |
| JOHN B. NEFF | 31,600 | $1,516,800 | WILMERHALE |
| DOFT & CO., INC. FIRM ACCOUNT | 30,900 | $1,483,200 | WILMERHALE |

| NAME | SHARES | SHAREHOLDER PAYMENTS | COUNSEL |
|---|---|---|---|
| HBK MASTER FUND LP A/K/A HBK MASTER FUND L.P. | 29,854 | $1,432,992 | WILMERHALE |
| MUTUAL FUND 27 | 29,509 | $1,416,432 | DECHERT LLP |
| HARVEST AA CAPITAL LP | 28,000 | $1,344,000 | SCHULTE ROTH & ZABEL, LLP |
| CORPORATION 1 | 24,930 | $1,196,640 | WILMERHALE |
| PLASMA PHYSICS CORP. | 24,800 | $1,190,400 | ASK, LLP |

| **NAME** | **SHARES** | **SHAREHOLDER PAYMENTS** | **COUNSEL** |
|---|---|---|---|
| OHIO CARPENTERS MIDCAP A/K/A OHIO CARPENTERS' PENSION FUND | 24,400 | $1,171,200 | VORYS, SATER, SEYMOUR AND PEASE LLP<br><br>SHUMAKER, LOOP & KENDRICK, LLP |
| DUDLEY C. MECUM | 22,013 | $1,056,624 | PORTER & HEDGES LLP |
| CORPORATION 5 | 21,400 | $1,027,200 | WILMERHALE |